The opinion of the Supreme Court was delivered Feby. 16, 1864, by
Woodward, J.:
This was a feigned issue under the Sheriff’s interpleader act to try the title to three mules, a four-horse wagon and the half part of another wagon, levied on as the property of James MeKown, at the suit of his creditor Conrad Poos. Pounder claimed to own the property by virtue of a bill of sale by John Bulkley to him executed on January 23,1858. The defendants in the issue who were executors of Poos, alleged that the property belonged MeKown. The only question was whether the title was in Pounder or in MeKown.
The essential facts were that Bulkley had owned this property which he employed with other teams in the lumbering business. That he kept his teams at a stable of the hotel which MeKown occupied, that MeKown bóarded his drivers and other employees, and sometimes advanced money to them and furnished hay for *28 the cattle — that under an arrangement between him and Buckley he was to share in the profits of the lumber business carried on by the latter, but upon settlement between them, it was found that there were no profits to divide and that Bulkley was indebted to McKown in the sum of $1,452.61, on account of which indebtedness McKown agreed to receive the mules and wagons in suit and a horse which was not in the levy, at the sum of $790, and that he requested Bulkley to make the bill of sale to Pounder instead of himself. It was done accordingly, after which Buckley took away the rest of his teams from the McKown stable and left the property in dispute at the stable as it had been before.
Pounder was present at the making of the bill of sale and accepted it, McKown saying to Bulkley that he owed Pounder on account of canal business transactions years previously, but no settlement was made or papers executed at the time between Pounder and McKown. Pounder engaged in the business of hauling coal and lumber alter the bill of sale and McKown drove team for him.
In order to show a consideration for McKown’s transfer of the property to Pounder he was examined very fully in reference to their dealings some eight years previously.' He said he owed Pounder some $1,000 or $1,100 on account of the coal business they bad carried on at Oak Hill in 1846 — that after they quit business there he conveyed to Pounder a tavern house he owned in consideration of $5,000 and took a mortgage for the purchase money — that there were some judgments against the property which Pounder agreed to pay and that the property was to compensate him for the liens he was to pay and for the debt he held against him McKown, but that Pounder failed to pay the liens and the property was sold at Sheriff’s sale to Major Wetherill to whom Pounder afterwards made a deed of release in consideration of one dollar, and that he never got anything out of that property. Pounder’s first wife was a sister of McKown and they had had numerous transactions in business which were explained with great minuteness of detail; but this outline of their dealings is sufficient to render intelligible the legal questions that were ruled in the trial and which we are here to review.
*29 A number of points were submitted to the Court on both sides of which the fifth point of the defendant relates to the transfer of the possession of the mules under the bill of sale. It was a well drawn point in these words: “If the jury believe that McKown was in partnership with Bulkley, and that after the transfer to Pounder of the mules and wagons in suit, Pounder did not take said property into his exclusive possession, but that they were kept in McKown’s stable and fed and used by him in the same way as before this transfer to Pounder, the sale to Pounder is void in law whether McKown was indebted to Pounder or not, and whether or not such transfer was on account of such indebtedness.” To which the learned judge answered that, “ McKown was a partner in the profits, but under the evidence he was not a partner in the personal property, and it belonged-accordingly to Bulkley. We, therefore, submit the question to the jury as a question of fact whether there was an actual change ©f possession. If there -was no actual change or delivery of possession from McKeon to Pounder, then the sale is void in law as against the plaintiff.” Now this answer was quite as favorable to the plaintiff as he had any right to expect for if McKown was entitled to share in the profits of the business which Bulkey carried on with his teams, how much less than a tenant in common was he of the property, Strictly speaking, he was not perhaps a partner, but if entitled to participate in the profits of a business he was assisting to carry on, it was going very far to say that he had no interest in the stock employed in that business. Yet the answer of the learned judge was favorable to the plaintiff and it placed the question of a delivery of possession before the jury free from all embarrassment that might have sprung from McKown’s proprietorship. Did Bulkley deliver possession to Pounder in pursuance of the bill of sale? That was a single clear questioxx. And it was decided against the plaixxtiff. We must take it as an established fact, thex’efox’e, that there was no actual change or delivery of possession from McKown to Pounder. The possessioxx had been in MeKowxx simply as bailee of Bulkley, if not as partner. In no sense whatever had Pounder had any possession before the bill of sale, axxd the jury have found he had none afterward. Thex’e is exxough in the ease to show that McKown was a debtor in straightened, if not ixx desperate cix’ *30 cumstances. Can there be any cloubt that the legal consequence of such facts was just what the Court stated it to be. From Clow vs. Woods in 5 S. & R., 274 to the last case in our books the rule has uniformly been declared that to make a debtor’s transfer of his goods effectual against his creditors it must be accompanied by actual delivery of possession according to the nature and circumstances of the goods. Pounder could have removed the mules and wagons from McKown’s stable as Bulkley removed the rest of his teams. Or, if there was necessity to keep them in McKown’s stable and permit him to use them as before the sale, it could have been explained in evidence, but it was not. Why was not this a ruling point of the case ? Supposing the Court to have been in error in everything else, the cause was decided against the plaintiff when the jury found that possession had not followed the bill of sale. There is nothing to distinguish the case from the ordinary run of such cases in the fact that the bill of sale was not made by McKown, but by Bulkley at his request. It was in legal effect a bill of sale between McKown and Pounder. No consideration passed from Pounder to Bulkley. If Pounder has title he got it from McKown, and from him he should have received the possession also. Whilst we think this point decisive of the cause, we have not neglected the other questions raised upon the record, but have examined' them and see no error whatever in the rulings of the learned judge. If it were necessary to go back into the dealings of Pounder and McKown to search for a consideration of the bill of sale, we should find no rulings to reverse, because wherever the view which the Court took of facts is questionable, we find it referred to the jury, and a judge is not to be reversed for reading evidence of facts as a jury reads it, even though it may differ from our reading. But all minute dissection of the ten assignments of of error is rendered unnecessary by the verdict upon the point of possession. The rejection of the record in the suit of Pounder vs. Fox was right. How could the feigned issue between those parties rule the feigned issue between these parties. The offer was obviously irrelevant and properly rejected.
The judgment is affirmed.